68957. MELNICK v. FUND MANAGEMENT, INC.
(324 SE2d 595)

CARLEY, Judge.

A money judgment was entered for appellee against Mr. Byron Best. In an attempt to satisfy at least a portion of the judgment, appellee filed the instant garnishment proceeding, naming appellant as the garnishee and invoking the continuing garnishment provisions of OCGA § 18-4-110 et seq. Appellant answered, stating that he held no property of Best's which would be subject to continuing garnishment. Appellant's answer also stated that he had not been Best's employer

at the time of service of appellee's summons of continuing garnishment nor at any time thereafter. See OCGA § 18-4-117. Appellee then filed a timely traverse of both responses contained in appellant's answer. Before the issues created by appellee's traverse of the answer could be resolved, appellant filed a "Notice of Stay" of the instant garnishment proceeding. In this "Notice," appellant stated that he had previously filed for voluntary bankruptcy on July 8, 1982, and, for this reason, any further garnishment proceedings should be stayed.

A hearing was conducted as to all of the issues, and the trial court ruled that the instant garnishment proceeding would not be stayed as the result of appellant's previously filed petition for bankruptcy. With regard to the existence of an employment relationship, the trial court denied appellee's traverse and sustained appellant's answer that he had never been Best's employer during the relevant time period. With reference to the issue of appellant's denial of possession of garnishable property, however, the trial court sustained appellee's traverse to the extent of $5,250. Based upon the foregoing, the trial court entered judgment for appellee in the amount of $5,250 plus interest, but held that appellant would not be subject to any further liability or obligation as would otherwise be the case in a continuing garnishment. Appellant appeals.

1. Appellant urges that the trial court erred in refusing to stay the instant proceedings. At the hearing, the following facts were adduced: The purported garnishable property was evidenced by a written agreement into which appellant and Best had entered on December 27, 1982, several months *after* appellant had filed his bankruptcy petition. Insofar as it is relevant to this enumeration, the agreement concerned a brokerage commission for "a contemplated sale of the Arlington Cemetery Company . . . to [appellant]" and provided that appellant "shall pay to [Best] $7,600.00 at the time of the closing of the cemetery property . . . ." It was established that the sale closed in March of 1983 but that appellant had not paid Best the $7,600 brokerage fee. Thus, the evidence clearly demonstrated that the $7,600 brokerage fee owed to Best, was an indebtedness incurred by appellant solely as the result of business activities conducted by him after he had filed for bankruptcy.

Under these circumstances, it was not error to fail to stay the instant garnishment proceeding. The applicability of the automatic stay provision of the federal bankruptcy code extends only to "the commencement or continuation . . . of a judicial, administrative or other proceeding against the debtor that was or could have been initiated before the filing of the petition for relief. Thus, postpetition matters are not covered . . . . Therefore, *if a proceeding is commenced against the debtor based on a postpetition claim, and if such*

*proceeding may adversely affect the debtor's rehabilitation efforts, the debtor will not have the benefit of an automatic stay; the debtor will have to seek injunctive relief from the Bankruptcy Court."* (Emphasis supplied.) Norton, Bankruptcy Law & Practice, § 20.05 (1981).

2. Appellant, relying upon the trial court's denial of appellee's traverse as to the issue of an employment relationship with Best, asserts that no liability whatsoever could be imposed in the context of the instant continuing garnishment proceeding. In essence, appellant urges a construction of OCGA § 18-4-117 such that, upon the determination that he was *never* Best's employer during the relevant period, an "automatic discharge" from any liability resulted and the trial court erred in failing to dismiss the entire garnishment proceeding. Accordingly, the issue presented for resolution is whether the actual existence of an employer-employee relationship is jurisdictional, so that in the event such a relationship does not exist, a garnishment which has been instituted pursuant to OCGA § 18-4-110 et seq. is of no legal effect whatsoever.

Continuing garnishment is to be construed as an addition to, rather than as a replacement for, the traditional garnishment remedy. OCGA § 18-4-110. A plaintiff in garnishment is thus authorized to invoke this additional remedy by filing an affidavit stating that he *"believes* that the garnishee is or *may be* an employer of the defendant and subject to continuing garnishment . . . ." (Emphasis supplied.) OCGA § 18-4-112 (a). Only one summons will be issued on the affidavit (OCGA § 18-4-112 (b)), but, if the garnishee is in fact the employer of the defendant, this summons triggers the employer-garnishee's obligation to file several answers and to deliver garnishable property over a specified period of time. OCGA § 18-4-113. This is the "continuing" aspect of a continuing garnishment proceeding. However, OCGA § 18-4-117 provides that a garnishee who is not the employer of the defendant and who therefore would not be subject to *continuing* garnishment may assert in his answer the non-existence or termination of the alleged employment relationship. If no traverse of the answer denying the employment relationship is filed, "the garnishee is automatically discharged from *further liability and obligation* under Code Section 18-4-113 for that summons with respect to *the period of continuing garnishment remaining* after the employment relationship is terminated." (Emphasis supplied.) OCGA § 18-4-117.

As we construe OCGA § 18-4-117, its purpose is to insure that only employers will be subject to the "additional" process of *continuing* garnishment and that non-employer garnishees shall be automatically discharged with regard to the *continuing aspect* of the action. Thus, if an answer asserting the non-existence of the employment relationship is not traversed, or, as in the instant case, if a traverse is

filed but is denied, the garnishee will automatically be discharged from such *further* obligation as would otherwise have arisen under OCGA § 18-4-113. OCGA § 18-4-117 does not, however, purport to discharge a non-employer garnishee from such *general* garnishment liability and obligation as was otherwise *in existence* at the time his original answer was filed. OCGA § 18-4-113 clearly requires that the garnishee who is served with a summons of continuing garnishment state in his original answer "what property, money or other effects of the defendant are subject to continuing garnishment *from the time of service through and including the day of the first answer . . . .*" (Emphasis supplied.) This obligation, as well as that imposed under OCGA § 18-4-113 (a) (3) to deliver the garnishable property, arises as the result of the non-employer's general status as a garnishee. By its terms, OCGA § 18-4-117 is not intended to obviate a non-employer-garnishee's compliance with OCGA § 18-4-113 (a) (1) and (3) if otherwise applicable, since any liability and obligation thereunder would already be in existence at the time his first answer is filed.

When a garnishee's compliance with OCGA § 18-4-113 (a) (1) or (3) is traversed, the procedure is "the same as for any other garnishment . . . ." OCGA § 18-4-110. thus, where the traverse is sustained, "the court shall . . . enter a judgment for any money or other property delivered to the court with the garnishee's answer, plus any money or other property the court finds subject to garnishment which the garnishee has failed to deliver to the court . . . ." OCGA § 18-4-92. Where the answer of a garnishee in continuing garnishment denying the existence of an employment relationship is unsuccessfully traversed, the garnishee is entitled to an automatic discharge pursuant to OCGA § 18-4-117 from *further* liability and obligation. This is the procedure followed by the trial court in the instant case. There was no error.

3. The final enumeration relates to the amount of the judgment which was entered against appellant. The $5,250 judgment was the result of a $2,350 set-off against the $7,600 brokerage fee that appellant owed Best. Appellant contends that Best's indebtedness to him was in excess of the $7,600 brokerage fee he owed Best and that, under these circumstances, appellee was entitled to no judgment. "[I]f the garnishee's claim against the defendant exceeds the amount of debt due the defendant by the garnishee, the garnishee's right of setoff defeats the plaintiff's claim against the garnishee. [Cit.]" *Gant, Inc. v. C & S Nat. Bank*, 151 Ga. App. 212, 214 (259 SE2d 485) (1979).

Appellant relies upon a paragraph of the December 27, 1982 agreement as demonstrating that Best's indebtedness to him was in excess of $7,600. The relevant paragraph provides "[t]hat 22% of any of the brokerage commission owed to Byron Best . . . shall be paid to

[appellant] to reimburse [appellant] for the payment of $20,000.00 expenses hereinabove referred to." The evidence was uncontradicted that this paragraph referred to a brokerage commission to be paid to Best for a prospective business deal *other* than the cemetery sale and that, unlike the consummated cemetery sale, this deal did not close and the brokerage commission was never earned by Best. Thus, it is clear that this paragraph does not evidence an indebtedness owed to appellant by Best. It is merely an assignment to appellant of a 22% interest in a brokerage commission that Best never earned.

The trial court found that, of the underlying enumerated expenses that were the subject of the assignment of a percentage of Best's unearned commission to appellant, only $2,350 represented an existing indebtedness which was clearly owed to appellant by Best. Thus, the trial court concluded that appellant was entitled to only a $2,350 set-off rather than an amount equal to the remaining expenses for which there was nothing to demonstrate Best's existing liability to appellant. Our review of the transcript demonstrates that this resolution of the issue of the amount of appellant's allowable set-off was correct. The trial court did not err in entering judgment for appellee in the amount of $5,250.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur. Beasley, J., disqualified.*

DECIDED NOVEMBER 28, 1984.

*Larry H. Chesin*, for appellant.
*Marvin P. Nodvin, Lewis N. Jones*, for appellee.